**NAGEL RICE, LLP**
Bruce H. Nagel
Randee Matloff
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
bnagel@nagelrice.com
rmatloff@nagelrice.com

**POULOS LOPICCOLO PC**
Joseph LoPiccolo
John N. Poulos
1305 South Roller Road
Ocean, NJ 07712
732-757-0165
lopiccolo@pllawfirm.com
poulos@pllawfirm.com

*Counsel for Plaintiffs and those similarly situated*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARTIN PUENTE and JOSHUA JENNINGS
On Behalf of Themselves and All Other Persons
Similarly Situated,

                        Plaintiffs,

      -against-

GENERAL MOTORS, LLC,

                       Defendants.

Case No.

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

      Plaintiffs, Martin Puente and Joshua Jennings by their attorneys Nagel Rice, LLP and

Poulos LoPiccolo PC on behalf of themselves and all others similarly situated, make the

following allegations on personal knowledge and information and belief:

## I.  IDENTIFICATION OF PARTIES
### (Local Rule 10.1)

1. The names and addresses of the named parties to this action are (i) Martin Puente, 605 North Ridge Court, Mocksville, North Carolina 27028, (ii) Joshua Jennings, 25105 N. 55th Drive, Phoenix, Arizona 85083 and (iii)General Motors, LLC, 300 Renaissance Center, Detroit, Michigan 48265.

## II.  INTRODUCTION

2. Plaintiff brings this action against General Motors, LLC ("Defendant" or "GM") for and on behalf of himself and a class composed of all current and former owners or lessees of 2014 to 2016 Chevrolet Sonics that were manufactured, marketed and sold or leased with incorrect EPA-fuel economy estimates (the "Class Vehicles").[1]

3. For years (potentially as far back as 2011 when GM began manufacturing the Sonic) Defendant advertised that the Chevy Sonic was EPA-rated up to 40 miles per gallon ("mpg") on the highway.

4. These ratings, however, were false. As detailed in a memorandum circulated by GM to its authorized dealerships, GM admitted the EPA Fuel Economy for the 2014-2016 Chevy Sonics, with manual transmission, were overestimated by at least 1 MPG. A copy of the memorandum is attached hereto as **Exhibit A**.

5. Plaintiffs Martin Puente and Joshua Jennings each own a 2015 Sonic. With respect to each of these vehicles, the EPA fuel economy ratings and advertised fuel efficiency numbers were inaccurate and higher than they would have been had proper testing procedures been followed by GM.

---

[1] Plaintiff reserves the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

6.      This action seeks relief for the injuries sustained as a result of GM's material misstatements regarding the Class Vehicles fuel economy ratings used in the marketing and sales of certain GM vehicles sold in the United States by the Defendant.

7.      Plaintiffs and the Class and Subclass Members have been damaged by GM's misrepresentations of the incorrect fuel economy because they were misled into purchasing or leasing a vehicle of a quality different than promised and paying higher fuel costs than would have otherwise been paid.

### III.    PARTIES

8.      Plaintiff Martin Puente resides in Mocksville, North Carolina.  On September 2, 2015, he purchased a new 2015 Chevy Sonic from Flow Automotive Center of Winston Salem, LLC. Plaintiff reviewed the specifications contained in the large book when he visited the dealership which showed the fuel economy for the all the various GM vehicles carried by the dealership. He actually opted for a car with manual transmission which showed better gas mileage than the car with automatic transmission. He also saw the EPA fuel economy window sticker that represented a certain number of miles per gallon before he purchased the Sonic in September 2015.

9.      Based on his review of the advertisements and the window sticker when they purchased the Sonic, Mr. Puente believed that the vehicle would achieve and he would receive the stated MPG. However, Mr. Puente noticed that the Chevrolet Sonic could not achieve the fuel economy touted in the advertisements and window sticker he saw as he drove daily from Greensboro to Mocksville, which is all highway driving.

10.     Mr. Puente noticed the horrible gas mileage associated with the Sonic well before GM notified him that GM misrepresented the mpg to them when they sold him the vehicle.  On September 30, 2016, Mr. Puente received a notice from GM stating "when you purchased your vehicle, the label indicated a combined mpg of 30 (27 city, 34 highway).  In fact the correct EPA-

estimated combined mpg is 29 (27 city, 34 highway)." Attached hereto as **Exhibit B** is a copy of the notice GM sent to Mr. Puente that is incorporated into this Complaint.

11.    The notice then stated that GM was willing to reimburse him $250 by way of a debit card for the estimated extra gas he would have to purchase based on the correct combined mpg of their vehicle. However, based on Mr. Puente's actual experience with his 2015 Sonic, this amount will not fully compensate him for the additional gas he will need to purchase as a result of GM's misrepresentation. Further, the notice did not offer to compensate Mr. Puente for the reduced value of the vehicle which effects its sales price.

12.    Had those advertisements and window sticker or any other materials disclosed that Plaintiff would not receive such favorable mileage, the Plaintiff would not have purchased the Sonic.

13.    Plaintiff Joshua Jennings resides in Phoenix Arizona. In October 2014 he purchased a new 2015 Chevrolet Sonic RS 6 speed from Courtesy Chevrolet in Phoenix, Arizona. He specifically chose a Chevy Sonic because of GM's representations regarding its excellent gas mileage. He had just changed jobs resulting in a 20 mile commute instead of his prior 5 mile commute. That motivated him to trade in his 4 x 4 truck for a fuel efficient vehicle. Everything he read about the Sonic and saw and heard at the dealership lead him to believe that it would be the perfect car based upon its gas mileage. He also saw the EPA fuel economy window sticker that represented a certain number of miles per gallon before he purchased the Sonic in October 2014. Attached hereto as **Exhibit C** is a copy of the window sticker that was on the vehicle.

14.    Based on his review of the information he reviewed and the window sticker when he purchased the Sonic, Mr. Jennings believed that the vehicle would achieve and he would receive the stated MPG. However, Mr. Jennings noticed that the Chevrolet Sonic could not achieve the fuel economy touted in the advertisements and window sticker he saw as he made his 20 mile

commute each work day.

15.    Mr. Jennings was very disappointed with his gas mileage even before GM notified him that it had misrepresented the mpg when he was sold the vehicle. GM admitted in its letter that the window sticker had provided an incorrect combined mgp which overestimated the gas mileage. GM offered him a mere $75 as compensation for their mistake which they later increased to $250 when he complained. Attached hereto as **Exhibit D** is a copy of the initial notice GM sent to Mr. Jennings that is incorporated into this Complaint.

16.    Based upon Mr. Jenning's actual experience with his 2015 Sonic, this amount will not fully compensate him for the additional gas he will need to purchase as a result of GM's misrepresentation. Further, the notice did not offer to compensate Mr. Jennings for the reduced value of the vehicle which effects its sales price.

17.    Had those advertisements and window sticker or any other materials disclosed that Plaintiff would not receive such favorable mileage, the Plaintiff would not have purchased the Sonic.

18.    Defendant GM is a limited liability company organized under Delaware law with its principal office located at 300 Renaissance Center, Detroit, Michigan 48265. Defendant designs, tests, manufactures, distributes, warrants, sells, and leases various vehicles under several prominent brand names, including, but not limited to, Chevrolet, Buick, GMC, GM, and Pontiac in this district and throughout the United States.

## IV.  JURISDICTION AND VENUE

19.    This court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because at least one class member is of diverse citizenship from the Defendant; there are more than 100 Class Members; and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has

personal jurisdiction over the parties because Defendant conducts substantial business in New Jersey, has had systematic and continuous contacts with New Jersey, and has agents and representatives that can be found in this State.

20.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant's conduct has injured Class and Subclass Members residing in this District. Accordingly, this Court has jurisdiction over this action and venue is proper in this Judicial District.

21.     Defendant is amenable to personal jurisdiction in New Jersey as Defendant conducts business within the state sufficient to be considered present in New Jersey.

## V.     FACTUAL ALLEGATIONS

22.     Under regulations issued by the EPA, every new vehicle sold in the United States must have a window sticker (also known as a Monroney sticker) affixed to the window. The window sticker must contain certain essential information such as the vehicle's mpg estimates.

23.     The EPA requires all automakers to use certain standard testing procedures to determine a particular vehicle's mileage estimates that are then displayed on the vehicle's Monroney sticker.

24.     In fact, in 2006, the EPA revised the testing methods used to determine fuel economy ratings (for both city and highway mileage) appearing on the window stickers of all new vehicles. This revision became effective with 2008 model-year vehicles.

25.     The EPA's revision incorporated several significant changes to the prior testing methods. First, the tests now include factors such as high speeds, quicker accelerations, air conditioning use, and driving in cold temperatures, which bring the mpg estimates closer to consumers' actual fuel economy. Second, beginning with the 2011 model year, certain heavier vehicles (such as SUVs and vans up to 10,000 pounds gross vehicle weight) must have fuel economy labels. Third, the EPA required a change in the design and content of window stickers

for vehicles manufactured after September 1, 2007, to allow consumers to more easily compare the fuel economy of different vehicles.

26.     In 2013, the EPA instituted a plan to tighten its rules and standards regarding MPG information provided by vehicle manufacturers such as the Defendants.

27.     The Defendants failed to abide by said rules and standards when providing the Class Vehicle MGP information on their window stickers.

28.     The vehicle manufacturers conduct the mpg tests and transmit the data to the EPA, who certifies the numbers. The EPA tests approximately 150 to 200 vehicles a year (fifteen percent of all possible vehicle configurations) to ensure that their performance matches the mileage and emissions data submitted to the EPA by automakers.

29.     Defendant knew or should have known their stated fuel economy ratings were uniformly inaccurate across a large segment of vehicles and model years.

30.     Fuel mileage is one of the most important factors in a consumer's decision to purchase or lease a new car.

31.     Car companies, such as Defendant, widely tout their vehicles as having superior gas mileage estimates and fuel economy ratings in advertisements, especially where their vehicles allegedly achieve better fuel economy ratings than their competitors.

32.     At all times, GM possessed vastly superior information to that of consumers about the inaccurate results of their fuel economy testing and the corresponding increase in mpg ratings provided to consumers through advertisements and the Class Vehicles' window stickers.

33.     One of the factors consumers consider in purchasing or leasing a vehicle is gas mileage estimates and fuel economy ratings contained on vehicle windows stickers and featured in manufacturers' websites, brochures and advertisements, to help them make informed decisions about the vehicles they purchase or lease.

34.     Plaintiffs considered their respective vehicle's gas mileage estimates and/or fuel economy ratings in deciding to purchase or lease their vehicles.

35.     Upon information and belief, Defendant has sold or leased at least 285,000 Chevy Sonics between 2014 and 2016. The exact number which knowingly containing inaccurate Monroney stickers, which overstated the estimated gas mileage and fuel economy rating information on the vehicle is presently unknown but is believed to number many thousands .

36.     Plaintiffs purchased a Class Vehicle based on their reasonable expectations that the vehicle would perform consistent with the estimated gas mileage and fuel economy rating information contained on the window sticker and has been harmed by the inability of their vehicles to achieve the advertised estimates.

## VI.     CLASS ACTION ALLEGATIONS

37.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

38.     Plaintiffs seek certification of a Class and Subclass, initially defined as follows:

**Class (the "Nationwide Class"):**

All persons or entities in the United States who are current or former purchasers or lessees of the Class Vehicles.

**Subclass (the "Arizona Class"):**

All persons or entities in Arizona who are current or former purchasers or lessees of the Class Vehicles.

**Subclass (the "North Carolina Class")**

All persons or entities in North Carolina who are current or former purchasers or lessees of the Class Vehicles

39.     Specifically excluded from the Class and Subclass are:  (a) Defendant and any entity in which Defendant has a controlling interest, (b) any of Defendant's officers, directors, employees, agents, representatives, and their family members, and officers, directors, employees,

agents, representatives, and their family members of any entity in which Defendants have a controlling interest, and (c) any judicial officers involved in this matter.

40.     **Numerosity/Impracticability of Joinder**: The members of the Class and Subclass are so numerous that joinder of all members would be impracticable. The proposed Class and Subclass includes tens of thousands of members. At least tens of thousands of Class Vehicles have been sold. The Class and Subclass are composed of an easily ascertainable, self-identifying set of individuals and entities that own or leased the Class Vehicles. The precise number of Class and Subclass Members can be ascertained by reviewing documents in Defendant's possession, custody, and control.

41.     Plaintiff is a member of the Class and Subclass.

42.     **Commonality and Predominance**: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class and Subclass. These common legal and factual questions, include, but are not limited to, the following:

   a.   Whether Defendant violated federal law with their testing methods or presentation of EPA fuel ratings;

   b.   Whether the Class Vehicles' stated EPA fuel economy rating was inaccurate;

   c.   Whether Defendant advertised, marketed and sold the Class Vehicles using false and overstated gas mileage and fuel economy rating information;

   d.   Whether the Class Vehicles' actual, inferior gas mileage estimates and fuel economy ratings reduced the value of the Class Vehicles;

   e.   Whether Defendant knew or should have known that the Class Vehicles' fuel economy ratings were overstated or exaggerated prior to EPA testing;

   f.   Whether Defendant breached their contracts with Plaintiff and the Class Members;

   g.   Whether Defendant violated the Arizona Consumer Fraud Act §44-1522

h. Whether Defendant violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. §75-1.1;

i. Whether Defendant breached its express warranties made to Plaintiffs and the Class Members;

j. Whether Defendant was unjustly enriched by their deceptive practices; and

k. Whether, by the misconduct set forth herein, Defendant breached its duty of good faith and fair dealing;

43. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class and Subclass. Plaintiffs and all Class and Subclass Members have been injured by the same wrongful practices by Defendant. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class and Subclass Members and are based on the same legal and remedial theories. Indeed, Plaintiffs and all members of the Class and Subclass purchased or leased a subject GM that was marketed and sold to them with false estimated gas mileage and fuel economy rating information.

44. **Adequacy**: Plaintiffs will fully and adequately assert and protect the interests of the Class and Subclass Members, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the Class and Subclass Members.

45. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class and Subclass Members is not economically feasible and is procedurally impracticable. While the aggregate damages sustained by the Class and Subclass Members are in the millions of dollars, and are no less than five million dollars upon information and belief, the individual damages incurred by each Class and Subclass Member resulting from GM's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class

and Subclass Members prosecuting their own separate claims is remote, and, even if every Class and Subclass Member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Class and Subclass Members do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no unusual difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

46.     In addition, Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass Members and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class and Subclass as a whole is appropriate.

## VII.  TOLLING

**Discovery Rule**

47.     The causes of action alleged herein accrued upon discovery of the misrepresentation of the estimated fuel economy by Defendant in August 2016. Because the incorrect fuel economy is latent, and GM concealed it, Plaintiffs and members of the Class and Subclass did not discover and could not have discovered the true EPA fuel economy ratings of the Class Vehicles through reasonable and diligent investigation.   Reasonable and diligent investigation into the true EPA fuel economy ratings of the Class Vehicles did not and could not reveal a factual basis for a cause of action based on GM's concealment of the accurate EPA fuel economy ratings of the Class Vehicles.

**Fraudulent Concealment**

48.     Any applicable statutes of limitation have been tolled by GM's knowing and active

and ongoing concealment and denial of the facts as alleged herein. Plaintiffs and the Class and Subclass have been kept ignorant by GM of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and members of the Class and Subclass could not reasonably have discovered the true, accurate EPA fuel economy ratings of the Class Vehicles.

**Estoppel**

49.     GM was and is under a continuing duty to disclose to the Plaintiff and the Class and Subclass the true EPA fuel economy ratings of the Class Vehicles. GM knowingly, affirmatively, and actively concealed the true EPA fuel economy ratings of the Class Vehicles, and the concealment is ongoing. Plaintiff reasonably relied upon GM's knowing, affirmative, and/or active and ongoing concealment. Based on the foregoing, GM is estopped from relying on any statutes of limitation in defense of this action.

## VIII.   CLAIMS FOR RELIEF

### FIRST COUNT (On Behalf of Plaintiffs, Class and Subclass Members)
### (Breach of Contract)

50.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

51.     Defendant, through the Class Vehicles' window stickers, and Defendant's advertisements, brochures, website and other marketing materials, made uniform offers regarding the quality and capabilities of the vehicles subject herein, including that they meet represented gas mileage estimate levels and achieved the represented fuel economy ratings.

52.     By purchasing or leasing the Class Vehicles, Plaintiffs and members of the Class accepted Defendant's offer and paid the consideration of the purchase or lease price.

53.     Defendant, Plaintiffs and the Class and Subclass Members each had the legal

capacity to enter into the purchase or lease contracts.

54.     Defendant breached the contracts by not upholding their end of the bargain by providing a product that does not meet the represented gas mileage estimate levels or to achieve the represented fuel economy ratings.

55.     As a direct and proximate cause of Defendant's breach, Plaintiffs and the Class and Subclass Members were damaged through higher fuels costs and loss of resale value in the amount to be proven at trial.

### SECOND COUNT (On Behalf of Plaintiff Jennings and Subclass Members (Violations of the Arizona Consumer Fraud Act §44-1522.)

56.     Plaintiffs incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

57.     This claim is asserted on behalf of Plaintiff Jennings, and a sub-Class of all purchasers of Class Vehicles in Arizona.

58.     Plaintiff Jennings and members of the sub-Class are individuals who have purchased Class Vehicles in reliance upon the advertisements and product labeling described above.

59.     Defendant has engaged in unlawful practices under the Arizona Consumer Fraud Act §44-1522 by employing deception, deceptive acts or practices, fraud, false pretenses, false promises, misrepresentations or concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of Defendant's products. Defendant's conduct was at all times willful in that it knew or should have known that its conduct was of a nature prohibited by §44-1522.

60.     As a direct result of Defendants acts of wrongdoing in violation of §44-1522, Plaintiffs and members of the sub-Class have been damaged in an amount which is presently

unascertainable, but which will be determined from discovery prior to trial.

61.     Plaintiffs and the members of the Class are entitled to an award of punitive damages for the willful, wanton, and malicious practices by Defendant, in violation of the Arizona Consumer Fraud Act.

### THIRD COUNT (On Behalf of Plaintiff Puente, and North Carolina Subclass Members) (Unfair and Deceptive Trade Practices-N.C.G.S. §75-1 et seq)

62.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

63.     This claim is asserted on behalf of Plaintiff Puente and a sub-Class of all purchasers or lessees of Class Vehicles in North Carolina.

64.     Defendant advertised and represented that their 2014-2016 Sonics would provide the users with the gas mileage as indicated in their advertising and on the window stickers affixed to the vehicles.

65.     Defendant knew or should have known that the promised fuel efficiency would not confirm to Defendant's representations and promises.

66.     Defendant concealed the true and accurate gas mileage that Class Members would actually achieve and withheld material facts from Plaintiffs and other members of the Class with respect to the Class Vehicles.

67.     Defendant's representations, actions and conduct regarding the class mileage for the Class Vehicles were in or affecting commerce, for purposes of establishing liability under Chapter 75 of the North Carolina General Statutes.

68.     Defendant's actions and conduct, as alleged in this Class Action Complaint, constitute unfair or deceptive acts or practices, in or affecting commerce, in violation of provisions of Chapter 75 of the North Carolina General Statutes.

69.     As a direct and proximate result of Defendant's unfair and/or deceptive conduct, in or affecting commerce, Plaintiff and the sub-Class Members are entitled to recover treble damages from Defendant, pursuant to the provisions of North Carolina General Statute §75-16, and to recover their reasonable attorneys' fees, as provided for in North Carolina General Statute §75-16.1.

## FOURTH COUNT (On Behalf of Plaintiffs, Class and Subclass Members) (Fraud)

70.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

71.     Plaintiffs bring this cause of action on behalf of themselves and members of the Class and Subclasses against Defendant.

72.     The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiffs and the members of the Class and Subclass, as set forth above, were known, or through reasonable care should have been known, by Defendant to be false and material and were intended to mislead Plaintiffs and the members of the Class and Subclass.

73.     Plaintiffs and the Class and Subclass were actually misled and deceived and were induced by Defendant to purchase or lease the Class Vehicles which they would not otherwise have purchased or leased, or would have paid substantially less for the vehicle or agreed to pay a lower monthly lease payment.

74.     Defendant's misrepresentations, concealments and omissions concerning the fuel-economy of the Class Vehicles were material in Plaintiffs' and other Class and Subclass Members' decisions to purchase their vehicles.  In fact, the representations and omissions to the Class and Subclass Members were so fundamental to Plaintiffs' and Class and Subclass Members' decision making process that they would not have otherwise purchased or leased, or would have paid

substantially less for the vehicle or agreed to pay a lower monthly lease payment.

75.     Plaintiffs and the Class and Subclass suffered the damage described in this complaint as a proximate result thereof.

76.     As a direct and proximate result of Defendant's fraudulent conduct, Plaintiffs and Class and Subclass Members have suffered damages, for which they are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## FIFTH COUNT (On Behalf of Plaintiffs, Class and Subclass Members)
### (Breach of Implied Warranties)

77.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

78.     GM sold and promoted its vehicles as having certain EPA fuel economy ratings, and placed those vehicles into the stream of commerce.  Defendant knew or had reason to know of consumers' particular purpose for purchasing the vehicles, which were being purchased or leased because of claims of certain, low gas mileage, and Defendant impliedly warranted that the vehicles were of merchantable quality.

79.     Plaintiffs and the Class and Subclass Members relied on Defendant's misrepresentations by purchasing the Class Vehicles.

80.     Defendant knew or had reason to know that Plaintiffs and the Class and Subclass Members were influenced to purchase or lease their vehicles through Defendant's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

81.     The Class Vehicles were not fit for their particular intended use because their EPA fuel economy ratings were not as promoted and advertised.

82.     Defendant's actions, as complained of herein, breached their implied warranty that the vehicles were of merchantable quality, in violation of the Uniform Commercial Code (UCC §

2-314 and § 2-3154) and the common law of this State, as well as the common law and statutory laws of the other states.

83.     Plaintiff and the Class and Subclass Members have incurred damage as described herein as a direct and proximate result of the failure of Defendant to honor their implied warranty. In particular, Plaintiffs and Class and Subclass Members would not have purchased or leased the vehicle had they known the truth about the overstatement of its fuel ratings, nor would they have suffered the collateral effects and damages associated with these misstatements.

### SIXTH COUNT (On Behalf of Plaintiffs, Class and Subclass Members) (Breach of Express Warranties)

84.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

85.     Defendant, through the Class Vehicles' window sticker, advertisements, brochures, website and other marketing materials, made representations to Plaintiffs and members of the class about the Class Vehicles' gas mileage and fuel economy ratings.  Thus, Defendant expressly warranted in its advertisements, brochures and notices that the Class Vehicles experience specific mpgs.

86.     These representations were aimed at consumers, including Plaintiffs and members of the class to entice them to purchase or lease the Class Vehicles.

87.     Defendant's representations were part of the basis of the bargain because fuel economy is one of the most important considerations facing vehicle purchasers or lessees and Plaintiffs and Class and Subclass Members purchased or leased the Class Vehicles based on the reasonable expectation that the Class Vehicles would achieve the represented gas mileage and fuel economy ratings.

88.     Because the Class Vehicles cannot achieve the fuel efficiency levels Defendant

represented to them to have, Plaintiffs and members of the Class and Subclass have been injured through higher fuel costs and loss of resale value of their vehicles, and these injuries were directly and proximately caused by Defendant's misrepresentations.

89.     As a result of GM's breach of warranty, Plaintiff and the Class and Subclass Members have suffered damage in an amount to be determined at trial.

### SEVENTH COUNT (On Behalf of Plaintiffs, Class and Subclass Members) (Violation of Magnuson-Moss Act (15 U.S.C. §2301 et seq.)

90.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

91.     The Plaintiff and the Class and Subclass Members are "consumers" within the meaning the of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq* ("Magnuson Moss Act").

92.     GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act.

93.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Act.

94.     Under the Magnuson-Moss Act, GM was obligated to disclose to consumers the correct EPA-estimated miles per gallon for the Class Vehicles.

95.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

96.     Defendant provided Plaintiffs and the other Class and Subclass members with an implied warranty of merchantability in connection with the purchase or lease of their Vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendant warranted that the Class

Vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

97.     Defendant breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).

98.     Defendant breach its obligations under written warranties by misrepresenting the correct EPA-estimated miles per gallon on the Class Vehicles and therefore are liable to Plaintiffs and the Class and Subclass pursuant to 15 U.S.C. § 2310(d)(1).

99.     Any efforts to limit the warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

100.    Plaintiff and the other Class and Subclass members have had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract.

101.    Nonetheless, privity is not required here because Plaintiffs and other Class and Subclass members are intended third-party beneficiaries of contracts between Defendant and its dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers

102.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Vehicle Manufacturer Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

103.    The amount in controversy of Plaintiffs' individual claims meet or exceed the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs,

individually and on behalf of the other Class and Subclass members, seek all damages permitted by law, including diminution in value of their Vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class and Subclass members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class and Subclass members in connection with the commencement and prosecution of this action.

104.    Further, Plaintiffs and the Class and Subclass are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).

### EIGHTH COUNT (On Behalf of Plaintiff, Class and Subclass Members) (Negligent Misrepresentation)

105.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

106.    Defendant made fuel economy representations to Plaintiff and members of the Class and Subclass that were not true. Defendant's statements were material, false, deceptive, and misleading and omitted material facts necessary to make the statements not misleading; such material misrepresentations and omissions were the result of Defendant's negligence.

107.    Defendant owed a duty to Plaintiff and members of the Class and Subclass to exercise reasonable care in making representations about the Class Vehicles.

108.    Plaintiffs and the Class and Subclass Members relied (or should be presumed to have relied) on Defendant's material representations and omissions in purchasing or leasing the Class Vehicles. As a result of their justifiable reliance, Plaintiffs and members of the Class and Subclass were induced to and did purchase or lease their vehicles. Plaintiffs' reliance and the Class and Subclass Members' reliance were reasonably foreseeable by Defendant (and in fact, that

is why the Defendant made the misrepresentations that they did).

109.    As a direct and proximate result of the negligent misrepresentations made by Defendant, Plaintiffs and the Class and Subclass Members have been damaged.

## NINTH COUNT (On Behalf of Plaintiffs, Class and Subclass Members)
## (Unjust Enrichment)

110.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

111.    Defendant has been unjustly enriched and received an economic benefit by the sale or lease of the Class Vehicles herein to Plaintiffs' and the Class and Subclass Members.

112.    Plaintiffs seek to recover for Defendant's unjust enrichment.

113.    Plaintiffs and the Class and Subclass Members conferred a benefit on Defendant, but Defendant failed to disclose their knowledge that Plaintiffs did not receive what they paid for and misled Plaintiffs and the Class and Subclass Members regarding the misstatements of their touted EPA fuel economy ratings while profiting from this deception.

114.    The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Defendant to retain the benefit of these profits that they have unfairly obtained from Plaintiffs and the Class and Subclass Members.

115.    Plaintiffs and the Class and Subclass Members, having been injured by Defendant's conduct, are entitled to restitution or disgorgement of profits as a result of the unjust enrichment of Defendant to their detriment.

## TENTH COUNT (On Behalf of Plaintiffs, Class and Subclass Members)
## (Breach of the Duty of Good Faith and Fair Dealing)

116.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

117.    Every contract in New Jersey contains an implied covenant of good faith and fair

dealing.  The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

118.    Defendant breached the covenant of good faith and fair dealing by, *inter alia*, misrepresenting to Plaintiffs and Class and Subclass Members the true gas mileage in the Class Vehicles, and failing to fully and properly correct this misrepresentation prior to the time of purchase or lease.

119.    Defendant acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class and Subclass Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the Class and Subclass Members, pray for judgment against GM granting the following relief:

1.    An order certifying this case as a class action and appointing Plaintiffs to represent the Class and Subclass Members and Plaintiffs' counsel as Class counsel;

2.    All recoverable compensatory and other damages sustained by Plaintiffs and the Class and Subclass Members;

3.    Restitution and disgorgement of all amounts obtained by GM as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

4.    Permitting Plaintiffs and the Class and Subclass Members to rescind their vehicle purchase or lease transactions;

5.    Actual, treble, and/or statutory damages for injuries suffered by Plaintiffs and the Class and Subclass Members in the maximum amount permitted by applicable law;

6.    Statutory pre-judgment and post-judgment interest on the Class and Subclass

damages;

7.    Payment of reasonable attorneys' fees and costs as may be allowable under

applicable law; and

8.    Such other relief as the Court may deem just and proper.

## X.    <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated:  November 21, 2016

**NAGEL RICE, LLP**

By: */s Bruce H. Nagel*
    Bruce H. Nagel
    Randee M. Matloff

103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
rmatloff@nagelrice.com
bnagel@nagelrice.com

**POULOS LOPICCOLO PC**

By: */s/ Joseph LoPiccolo*
    Joseph LoPiccolo
    John N. Poulos

1305 South Roller Road
Ocean, NJ 07712
732-757-0165
lopiccolo@pllawfirm.com
poulos@pllawfirm.com

# EXHIBIT A

# Customer Satisfaction Program
## 53941 Incorrect Fuel Economy Information



| | | | |
|---|---|---|---|
| **Reference Number:** | N162053941 | **Release Date:** | August 2016 |
| **GWM Number:** | 2053941 | **Revision:** | 01 |
| **Revision Description:** | This bulletin was revised to update the Customer Notification section. Please discard all previous copies of bulletin 53941. | | |

| Attention: | All involved vehicles that are in dealer inventory must be held and not delivered to customers, dealer traded, or used for demonstration purposes until the corrected window label is affixed to the vehicle per this bulletin. |
|---|---|
| | Vehicles involved in this program were placed on stop delivery on June 22, 2016. Once the procedure contained in this bulletin has been performed on the vehicle, the vehicle is released from stop delivery and the vehicle can be delivered to the customer. |
| | With regard to involved customer vehicles, no action is required by dealers. See the customer notification section for details. |

| Make | Model | Model Year From | Model Year To | RPO | Description |
|---|---|---|---|---|---|
| Chevrolet | Sonic | 2014 | 2016 | LUV | Engine, 1.4L turbo |
| | | | | MR5 | Transmission, manual 6-speed |

Involved vehicles will be marked "open" in the near future on the Investigate Vehicle History screen in the GM Global Warranty Management system. This site should always be checked to confirm vehicle involvement prior to beginning any required inspections and/or repairs.

| Condition | GM discovered an error which affected the fuel economy information on the fuel economy labels on the 2014-2016 model year Sonic RS vehicles with manual transmissions. The error caused the EPA estimated fuel economy to be listed on the window label as 1 MPG higher (0.1L/100 KM lower) than it should have been. GM is stopping sale of the affected models until a corrected label is printed and affixed. GM will contact owners of the affected models to address this situation. This label error has no effect on the safety and operation of the vehicles. |
|---|---|
| Correction | Dealers are to remove the fuel economy (Monroney) label and affix a corrected label to the vehicle. |

## Part Information

Replacement labels with the correct fuel economy information are being reprinted and will be shipped to involved dealers of record via FedEx Overnight delivery. All of the replacement labels should begin arriving at U.S. dealers by June 30, 2016. Canadian dealers should expect replacement labels to begin arriving by July 4, 2016. Please do not attempt to order replacement labels via the BARS Reprint Request process in GM GlobalConnect prior to July 8, 2016. After that date, you may order additional labels through GM GlobalConnect. Log into GlobalConnect, select >Sales >BARS Reprint Request >COV/Price Fuel Label Request >Price Fuel Label. Enter the VIN and press Submit.

## Warranty Information

| Labor Operation | Description | Labor Time | Trans. Type | Net Item |
|---|---|---|---|---|
| 9102272 | Remove and Replace Fuel Economy (Monroney) Label | 0.1 | ZFAT | N/A |
| 9102398 | Floor Plan Reimbursement | N/A | ZFAT | * |

\* USA & Canada Only - Vehicles eligible for floor plan reimbursement are to submit the amount in "Net Item" and should represent the product of the vehicle's average daily interest rate (see table below) multiplied by the actual number of days the vehicle was in dealer inventory and not available for sale. This reimbursement is limited to the number of days from the date of the stop delivery message (June 22, 2016) to the date the repair is completed and the vehicle is ready for sale (not to exceed 14 days):

| Vehicle | Reimbursement Amount | |
|---|---|---|
| | USA | Canada |
| 2014 Chevrolet Sonic | $2.33 | $3.20 |
| 2015 Chevrolet Sonic | $2.31 | $3.20 |
| 2016 Chevrolet Sonic | $2.25 | $3.20 |

Copyright 2016 General Motors. All Rights Reserved.

## Customer Satisfaction Program
### 53941 Incorrect Fuel Economy Information



**Service Procedure**

**Note:** This procedure is for involved vehicles in dealer new vehicle inventory only. Replacement fuel economy (Monroney) labels for these vehicles are VIN specific. Please exercise due care to ensure that the correct label is affixed to the correct vehicle.

1. Carefully remove the factory installed label from the vehicle's window. Discard this label.

2. Carefully affix the replacement label to the vehicle's window.

**Dealer Responsibility**

All new vehicles in dealers' possession and subject to this program <u>must</u> be held and procedure of this bulletin performed <u>before</u> customers take possession of these vehicles. Involved vehicles must be held and not delivered to customers, dealer-traded, released to auction, used for demonstration, or any other purpose until the correlated window label is affixed to the vehicle.

**Dealer Reports**

For dealers with involved vehicles, a listing with involved vehicles has been prepared and will be provided to U.S. and Canadian dealers through the GM GlobalConnect Program Reports, or sent directly to export dealers.

**Customer Notification**

USA & Canada - General Motors will notify customers of this program on their vehicle. Included with the letter will be a paper reproduction of their vehicle's corrected fuel economy information. This facsimile is being provided for their records and no dealer action is required.

Export - Letters will be sent to known owners of record located within areas covered by the U.S. National Traffic and Motor Vehicle Safety Act. Dealers should notify owners outside these areas.

All - A sample letter will not be included with this bulletin due to multiple letter versions being printed. Customer letters were written with individual differences unique to the customer's ownership experience; such as how the vehicle was obtained (purchase or lease), length of lease, and whether or not the involved customer is still in possession of the vehicle.

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the tools, equipment, safety instructions, and know-how to do a job properly and safely. If a condition is described, <u>DO NOT</u> assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your dealer for information on whether your vehicle may benefit from the information.

We Support
Voluntary Technician
Certification

# EXHIBIT B



**CHEVROLET**

Martin Puente
605 Northridge Ct.
Mocksville, NC 27028
Your: 2015 Chevrolet Sonic
VIN: 1G1JH6SB8F4160149
PIN: CFCYCF
**chevrolet.com/sonicfueleconomy**

September 30, 2016

Dear Martin,

*We are resending this letter to you since our prior letter was returned to Chevrolet as undeliverable.*

We want to let you know that we have discovered an unintentional error in the EPA fuel economy estimates shown on the Fuel Economy and Environmental section of the window label of your 2015 Chevrolet Sonic RS manual transmission vehicle. When you purchased your vehicle, the label indicated an EPA-estimated combined MPG of 30 (27 city, 34 highway). In fact, the correct EPA-estimated combined MPG is 29 (27 city, 34 highway).  As a result, the EPA-calculated estimated fuel savings for your vehicle is $250 less, as compared to the average vehicle, over a 5-year period. A copy of the incorrect and corrected Fuel Economy and Environmental section of the label is displayed on the website listed below.

We apologize for this mistake. As a result, we would like to offer you a $250 debit card to reimburse you for the difference in the expected EPA-estimated fuel cost. **Please take action no later than October 31, 2016.** For additional details, please see the next page.

You may obtain the debit card online at **chevrolet.com/sonicfueleconomy**. You'll need your VIN and a PIN (they're printed on both pages of this letter, for your convenience). Once you log in, you will be asked to agree to certain terms and conditions, including a waiver of claims related to this error.

Additionally, enclosed you will find a copy of the Fuel Economy and Environmental section of the label with the corrected EPA-estimated fuel economy for your Sonic. You should keep this copy with your car papers.

Again, we are sorry for this mistake and please know we value your business and hope that you and your Sonic continue to "Find New Roads" together.

Sincerely,

Brian Sweeney
Vice President, Chevrolet

SP03

***FIND NEW ROADS***

# EXHIBIT C

**EPA DOT**

# Fuel Economy and Environment

Gasoline Vehicle

## Fuel Economy

# 29 MPG

**27** city  **34** highway

Compact cars range from 14 to 105 MPG.
The best vehicle rates 119 MPGe.

**3.4** gallons per 100 miles

combined city/hwy

## Annual fuel cost

# $1,800

## You save

# $2,000

in fuel costs
over 5 years
compared to the
average new vehicle.

## Fuel Economy & Greenhouse Gas Rating (tailpipe only)

1  **7**  10
Best

This vehicle emits 302 grams CO2 per mile. The best emits 0 grams per mile (tailpipe only). Producing and distributing fuel also creates emissions; learn more at fueleconomy.gov.

## Smog Rating (tailpipe only)

1  **6**  10
Best

Actual results will vary for many reasons, including driving conditions and how you drive and maintain your vehicle. The average new vehicle gets 24 MPG and costs $11,000 to fuel over 5 years. Cost estimates are based on 15,000 miles per year at $3.50 per gallon. MPGe is miles per gasoline gallon equivalent. Vehicle emissions are a significant cause of climate change and smog.

## fueleconomy.gov

Calculate personalized estimates and compare vehicles




**Smartphone QR Code™**



ecd

# EXHIBIT D



**CHEVROLET**

Joshua Jennings
25105 N. 55th Dr.
Phoenix, AZ 85083
Your: 2015 Chevrolet Sonic
VIN: 1G1JH6SB2F4110735
PIN: CF3YRT
chevrolet.com/sonicfueleconomy

## $75 DEBIT CARD

You will receive your debit card by mail within 4 weeks.

To obtain your debit card, please visit
chevrolet.com/sonicfueleconomy
Please take action no later than October 31, 2016.

Your Previous Vehicle: 2015 Chevrolet Sonic
VIN: 1G1JH6SB2F4110735
PIN: CF3YRT
(These numbers will be required to log into the customer website.)

Please contact the Chevrolet Customer Relations Center at 1-800-222-1020 if you have any questions.

**FIND NEW ROADS**

JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Martin Puente and Joshua Jennings

**(b)** County of Residence of First Listed Plaintiff   Davie County, North Carolina
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*
Nagel Rice LLP, 103 Eisenhower Pkwy, Roseland NJ 973-618-0400
bnagel@nagelrice.com

## DEFENDANTS

General Motors LLC

County of Residence of First Listed Defendant   Detroit, Michigan
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Robert Ellis, Kirkland & Ellis, 300 North LaSalle, Chicago IL

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332d

Brief description of cause:
Consumer Fraud Class Action

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$ 5.000,000

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Hon. Renee Bumb

DOCKET NUMBER   16-04932

DATE
11/21/2016

SIGNATURE OF ATTORNEY OF RECORD
/s Bruce H. Nagel

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____